## Case No. 9,435.

### The MERCHANT.

### ACOSTA et al. v. The MERCHANT.

#### [4 Adm. Rec. 544.]

District Court, S. D. Florida. Dec. 9, 1851.

SALVAGE—AMOUNT—UNITED STATES MAILS.

[A schooner laden with rice, and carrying the United States mails, went upon Pacific Reef, and became a total loss. Two small vessels, carrying 22 men, saved the mails, $900 worth of cargo, $7,760 in specie, and three hundred and fifty dollars worth of surveying instruments, and carried them 150 miles into port. It appeared that the specie and surveying instruments could have been landed by the schooner's boats on a barren island near by. *Held*, that the salvors should be allowed 40 per cent. on the cargo, 6 per cent. on the specie, and 15 per cent. on the surveyors' instruments; but there could be no allowance for the mails, as they could not be sold for salvage.]

[This was a libel in rem by Manuel Acosta and others against the cargo and materials of the schooner Merchant for salvage.]

Samuel J. Douglas, for libellants.
Wm. R. Hackley, for respondent.

MARVIN, District Judge. The principal facts in this case may be briefly stated as follows: The schooner Merchant, from Charleston, laden with rice, and having on board the Key West, Havana, and California mails, in the night of the 27th of November, ran ashore on that part of the Florida Reef known as the Pacific Reef, situated near Cape Florida, and about one hundred and fifty miles from this port, and, soon after striking, bilged, filled with water, and became a total loss. In the morning the smack I. A. Latham (Manuel Acosta, master), of the burthen of 63 tons, and carrying a crew of 7 men, and the sloop Texas (Wm. H. Bethel, master), of 97 tons and 15 men, both engaged in the business of wrecking, arrived at the wreck, and at the request of the master, C. W. Westendorff, took on board their vessels the mails, the passengers, their baggage, and the materials of the vessel, and so much of the cargo as could be got, and as was worth saving, and brought them to this port. On their arrival, they delivered the mails to the agent of the contractor, to be forwarded. The cargo and the materials have been sold, producing the sum of $955.87. The Merchant had also on board $7,760 in specie, and three boxes of surveying instruments belonging to the United States, and then in the care of Mr. Totten, a passenger of the coast survey, and valued at $350. The specie and surveying instruments were brought to this port by the libellants.

It is very evident, that the cargo and materials saved would have been wholly lost but for the services of the salvors. As to these, I think forty per cent. of the amount sales is a reasonable salvage to be allowed the libellants. It makes $382.34.

It is equally clear, that the mails, the specie, and the surveying instruments were in no considerable peril of loss; for Captain Westendorff could have removed these to the land, in his boats; and without doubt would have done so had not the assistance of the libellants been offered. But had he removed them to the shore, they would still have been one hundred and fifty miles from any port, or from any place where they could be used, or made available to any practical purpose,—They would have been on a barren island, and to have removed them to this or any other port would have required a vessel, and he had none at his command, nor could one be procured, but by waiting for the arrival of some wrecking vessel cruising on the coast. Under these circumstances, I think the libellants have rendered to the owners of this property a very substantial and real service, that ought to be reasonably rewarded. The facts and circumstances fully considered, I think six per cent. upon the specie, or $465.60, and fifteen per cent., or $52.50, upon the value of the boxes of instruments, will be a reasonable compensation for the service rendered. The aggregate of these sums is $900.44; and allowing the one-half thereof to the owners of the wrecking vessels, and dividing the residue among the men the share of each will be about fifteen dollars.

In making this decision, I have allowed nothing to the salvors for their services in bringing the United States mails to this port. Under the circumstances, this was a valuable

and important service; but it would be unequal and unjust to increase the amount of the salvage upon the cargo and materials and upon the specie in order to compensate the salvors for this service; for this would be in effect to take the money of the owners or underwriters of this property to pay a claim they are in no manner liable for. Although the property of the United States is no more exempt from the payment of salvage than that of an individual, and in like manner may, in general (with exceptions founded on public policy), be retained by the salvor, or sold by order of the court for the payment of salvage, yet the mails of the United States cannot be considered or treated in this regard as property or as liable to detention or sale. The mail bags may perhaps be considered as property, but not their contents; and both, upon principles of public policy, would be exempted from detention or sale, upon a claim of salvage. In the present case, I think justice demands, that a moderate and reasonable sum should be paid the libellants for their services in taking the mails from the wreck, and bringing them to this port. But this court has no means by which to make such compensation.

It is ordered, adjudged, and decreed: That the libellants have, recover and receive in full compensation for their services in saving the cargo and materials of the schooner Merchant as by them alleged forty per cent. ($382.34) upon the amount sales thereof; and that they recover and receive six per cent. ($465.60) for their services in bringing the specie to this port, and fifteen per cent. ($52.50) upon the value of the boxes of instruments for like services; and that, upon the payment thereof and their proper proportion of costs, the marshal restore said specie and boxes of instruments to the claimants, for and on account of whom it may concern. That the clerk, in taxing the costs in this case, charge each species of property with the wharfage, storage, or other charges properly belonging to it; and that he apportion the costs in this suit between the different claimants or species of property, according to their respective value or amounts, and charge each species with its proper amount thereof.